IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ERNESTO CRUZ, | § | |
|     Defendant-Petitioner, | § | |
| | § | Nos. 3:07-CV-1674-D (BF) |
| v. | § | (3:04-CR-0254-D) |
| | § | ECF |
| UNITED STATES OF AMERICA, | § | |
|     Plaintiff-Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Defendant-Petitioner Ernesto Cruz ("Cruz") filed a motion to vacate, set aside, and correct sentence under 28 U.S.C. § 2255. Plaintiff-Respondent United States of America ("Government") filed a response in opposition to Cruz's motion. Cruz filed a reply on January 3, 2008. Cruz's sole claim is that he received ineffective assistance of counsel.

The Court held an evidentiary hearing on Cruz's claim on February 6, 2008. Cruz was present and represented by James C. Bell, Jr. Assistant United States Attorney Angie Henson represented the Government. Witnesses were sworn and testimony was taken. The Court's findings of fact and conclusions of law follow:

**I. BACKGROUND**

On August 3, 2004, Cruz was charged in one count of a nine-count indictment. Count three charged him with possession with intent to distribute more than 100 grams of heroin and aiding and abetting, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and 18 U.S.C. § 2. On February 4, 2005, Cruz pled guilty to count three. On June 24, 2005, the District Court sentenced him to imprisonment for a term of 151 months and a four-year term of supervised release. The Fifth Circuit Court of Appeals affirmed his conviction and sentence on October 2, 2006. His § 2255 motion was

timely filed on September 28, 2007.

## II. ISSUES

Cruz claims that he received ineffective assistance when his counsel (1) coerced him into admitting facts that were not true, and (2) understated the risk and sentencing exposure that he faced by entering into the plea agreement. He asserts that counsel's deficient conduct rendered his plea unknowing and involuntary.

## III. STANDARD OF REVIEW

To prove a claim of constitutionally ineffective assistance of counsel, a petitioner must show that his counsel's performance was deficient and that the deficiency prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Failure to meet either the deficient performance prong or the prejudice prong will defeat a claim for ineffective assistance of counsel. A court need not address both components if the movant makes an insufficient showing on one. *United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000). The same standard is applicable even if the petitioner pled guilty. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

To prevail on the deficiency component of this test, a petitioner must identify the acts or omissions that were not the result of reasonable professional judgment. *Strickland*, 466 U.S. at 690. To prove prejudice in the context of a guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

## IV. ANALYSIS

Cruz hired counsel Walter A. Knowles, who was not fluent in Spanish, to represent him. Previously, Cruz was represented by Assistant Public Defender Robert J. Herrington. Mr.

Herrington was fluent in both Spanish and English. When Mr. Knowles initially interviewed Cruz, another counsel who was fluent in both Spanish and English was present. Later, Cruz called Mr. Knowles and spoke to him in English. Mr. Knowles questioned Cruz about his understanding of English and determined that he could communicate with Cruz in English. James C. Belt, Jr., who represents Cruz on his § 2255 motion, told the Court at the evidentiary hearing that Cruz speaks "pretty good English," and communication was not a problem. (Evid. Hrg. Tr. at 33.). The Court finds that both Mr. Belt and Mr. Knowles were able to communicate with Cruz without an interpreter.

A court will uphold a guilty plea on collateral review if it was entered into voluntarily, intelligently, and knowingly. *See Daniel v. Cockrell*, 283 F.3d 697, 702-03 (5th Cir.2002)(holding a guilty plea must be voluntary, knowing, and intelligent), overruled on other grounds *Glover v. United States*, 531 U.S. 198, 203 (2001); *United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000)(holding the same); *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000)(holding the same). The longstanding test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill*, 474 U.S. at 56; *United States v. Brown*, 328 F.3d 787, 789 (5th Cir. 2003).

For a prisoner to receive federal habeas relief on the basis of alleged promises that are inconsistent with representations made in open court when his guilty plea was accepted, he must "'prove (1) exactly what the terms of the alleged promise were; (2) exactly when, where, and by whom such a promise was made; and (3) the precise identity of an eyewitness to the promise.'" *Davis,* 825 F.2d at 894 (quoting *Smith v. McCotter*, 786 F.2d 697, 701 (5th Cir. 1986)). A "prediction, prognosis, or statement of probabilities . . . does not constitute an 'actual promise'."

*Harmason*, 888 F.2d at 1532. A counsel's erroneous estimate of the length of the sentence does not necessarily prove ineffective assistance. *Beckham v. Wainwright*, 639 F.2d 262, 265 (5th Cir. 1981). Rather, a counsel's "good faith but erroneous prediction of a sentence . . . does not render the guilty plea involuntary." *Johnson v. Massey*, 516 F.2d 1001, 1002 (5th Cir.1975). Similarly, a guilty plea is not rendered involuntary because the defendant's misunderstanding was based on defense counsel's inaccurate prediction that a lesser sentence would be imposed. *Daniel*, 283 F.3d at 703.

In his plea agreement, Cruz agreed to have his sentence determined under the sentencing guidelines and acknowledged that (1) no one could predict the sentence with certainty; (2) the sentence imposed was solely in the discretion of the Court; (3) he would not be allowed to withdraw his plea if the sentence was higher than expected; (4) his plea was not the result of force, threats or promises apart from those in the plea agreement; (5) no one had made any promises or guarantees as to what sentence the Court would impose; and (6) he was fully satisfied with his counsel's legal representation. (Dkt #72, pp. 2-5.) In his factual resume, Cruz acknowledges that he could be sentenced to imprisonment for a term of 40 years. (Dkt #73, p. 1.)

"[T]he representations of a defendant, his lawyer, and the prosecutor at a plea hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). At rearraignment, Cruz testified that he had been provided a copy of the indictment and had read it, or that it had been read to him in his native language. (Rearr. Tr., p. 4.) He testified that he was not pleading guilty "based on any promises made by anyone, other than the ones set forth in the plea agreement." (*Id*. at 6.) Cruz further testified that no one had threatened him or attempted in any way to force him to plead guilty and that no one had made any prediction or promise as to what his

4

sentence would be. (*Id*. at 11, 16.) Cruz testified that he understood that he could be sentenced to a maximum term of imprisonment of forty years and that the Court, and only the Court, would decide what his sentence would be. (*Id*. at 14, 16.)

Cruz acknowledged that his counsel had told him what he thought the guideline range might be. (*Id*. at 17.) He testified that he understood that, "when counsel expressed that opinion . . . he was stating his professional opinion based upon his experience and expertise in criminal law and in the sentencing guidelines, but that [that] represented a professional opinion, not a guarantee or promise concerning what the guideline range would be." (*Id*. at 17.) He also testified that he understood that no one can predict in advance what the guideline range or the sentence will be, that the Court could impose a sentence higher than the guideline range, and that if the sentence imposed were more severe than he expected, he would still be bound by his plea of guilty. (*Id*. at 18-19.) Cruz admitted "that the factual resume is true in every respect" and that he committed each of the elements of the offense of possession with intent to distribute more than 100 grams of heroin. (*Id*. at 19-20.) The District Court found that his guilty plea was knowing and voluntary. (*Id*. at 20.)

At the evidentiary hearing, Cruz testified that "Mr. Knowles handed me a plea agreement and I returned it to him with what I wanted . . . ." (Evid. Hrg. Tr. at 34.) Cruz wanted the amount of heroin to be reduced from 100 grams to 25 grams of heroin and for the cocaine transaction not to be considered.[1] (*Id*.) Cruz testified that Mr. Knowles told him not to worry, that he was being

---

[1] This testimony is inconsistent with Cruz's affidavit, filed October 16, 2007, in which he swore that "[i]n advising me to accept the government's plea offer, defense counsel Knowles advised me that if I accepted the plea deal I would only be held accountable for 100 grams of heroin" and "I would not have entered into the plea agreement if I thought I was going to be held responsible for more than 100 grams of heroin." By the time of the hearing, his story included dropping the amount of heroin to 25 grams and insisting that he was not involved in the cocaine.

sentenced for count three, which was the heroin, and that he was going to talk to the prosecutor concerning the crack cocaine. Cruz stated that the only reason he signed the plea papers and the Factual Resumé was because Mr. Knowles was going to talk to the prosecutor about the 25 grams of heroin and the cocaine. (*Id.*) Cruz's testimony at the evidentiary hearing, which directly contradicts his testimony at the rearraigment hearing, is not credible. Cruz presented no credible evidence that Mr. Knowles ever promised him a sentence based only upon a lower amount of heroin without consideration of the cocaine, or a shorter sentence than he received.

Further, the Court finds credible Mr. Knowles' testimony that never told Cruz that if he pled guilty he would receive a specific sentence. (Evid. Hrg. Tr. at 14.) The Court finds that Mr. Knowles explained the sentencing guidelines to Cruz, and that Cruz understood that only the Judge could determine the sentence. (*Id.*) In fact, Cruz notified Mr. Knowles that he wanted to plead guilty because his co-defendants were going to testify against him. (Id. at 11.) Cruz's co-defendant Clara Vasquez ("Vasquez") sent him a message on January 18, 2005, telling him not to go to trial because the DEA wanted her to testify against him. (Doc. 9 at 7.) Cruz testified before the District Court that his friends advised him to plead guilty. (Sent. Tr. pp. 16-17.) Knowles did not coerce Cruz into pleading guilty rather than going to trial.

The Presentence Report ("PSR") states that Cruz was a user and seller of heroin and one time boyfriend of Vasquez, to whom he gave drugs on a day-today basis for her to sell. (PSR at 4.) The PSR indicates that Cruz was a member of the Gomez organization. That organization conducted its cocaine and cocaine base transactions by allowing Cruz and others to stash drugs and money at various apartments and complexes managed by a member of the organization. (PSR at 5.) The PSR states that "Cruz . . . admitted that he assisted Vasquez in the distribution of approximately 150

grams of cocaine base during the course of the investigation." (PSR at 6.) Specifically, after Vasquez obtained cocaine base from Sergio Garcia, Cruz went to Vasquez's apartment to help her in the pricing of the cocaine base. Cruz wanted to ensure that Vasquez would profit from the cocaine base transaction involving 151.8 grams. (*Id.*) According to the PSR, Cruz was held accountable for 475.2 grams of heroin and 151.8 grams of cocaine base. (*Id.*) Cruz told the Probation Officer that he signed the Factual Resumé with the understanding that his attorney would talk to the Probation Officer who would be able to see that only one 25-gram heroin transaction actually occurred. According to the PSR, Cruz did not receive Acceptance of Responsibility because he did not accept responsibility for his offense. Counsel for Cruz filed extensive objections to the PSR arguing (1) that Cruz should have been allowed a three-level decrease for acceptance of responsibility, rather than no decrease; (2) that based on the drug quantity, the base level for the offense should have been 32 rather than 34; (3) that Cruz should have received an adjustment for minor role in the offense because his only connection to the Gomez connection was Clara Vasquez; and (4) that the safety valve should have been applied. (Def. Resp. and Obj.) Cruz also requested that the District Court depart downward.

The District Court sustained Cruz's objection regarding acceptance of responsibility to the extent of granting a two-level decrease. (Sent. Tr. at 7.) The District Court overruled Cruz's objections to the drug quantities and accepted the PSR and Addendum to the PSR. (Sent. Tr. at 10.) With respect to Cruz's role in the offense, the District Court overruled the objection and found that Cruz was not substantially less culpable than the average participant and that he did not lack knowledge or understanding of the scope and structure of the drug conspiracy. (Sent. Tr. at 11.) Counsel withdrew the safety valve objection because Cruz was not qualified for it. The District

7

Court overruled Cruz's other objections and denied the motion to depart downward. The District Court sentenced Cruz to the minimum under the advisory guideline range, 151 months.

In connection with his § 2255 motion, Cruz solicited an affidavit from his one-time girlfriend Vasquez stating that "she offered her voluntary testimony" that Cruz did not participate in the cocaine transaction that went down minutes before the heroin transaction, but "Mr. Cruz' [sic] attorney never approached me to that effect." The Vasquez affidavit is neither credible nor of any evidentiary value. Cruz failed to prove that, but for ineffective assistance of counsel, he would have insisted on going to trial. Cruz has failed to show that Mr. Knowles provided deficient performance or that he was prejudiced by Mr. Knowles' representation. Mr. Knowles did not provide constitutionally ineffective assistance of counsel.

## V.     RECOMMENDATION

The record conclusively shows that Cruz is not entitled to relief. This Court recommends that the District Court **DENY** the motion brought pursuant to 28 U.S.C. § 2255.

Signed, this 30th day of June, 2008.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).